IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL DOUGHERTY | : | CIVIL ACTION |
| | : | |
| v. | : | No.   09-902 |
| | : | |
| JEFFREY BEARD, et al. | : | **THIS IS A CAPITAL CASE** |

<u>MEMORANDUM</u>

**Juan R. Sánchez, J.**                                                                                          **October 28, 2009**

On October 6, 2000, Daniel Dougherty was sentenced to death for killing his two sons by setting fire to his house while the boys slept.  At his trial, an Assistant Fire Marshal for the Philadelphia Fire Department, John Quinn, testified the fire was intentionally set based on his interpretation of physical evidence at the scene.  Quinn also testified Dougherty's recitation of the circumstances surrounding the fire was not credible.  Dougherty's trial counsel cross-examined Quinn but did not introduce independent testimony or other evidence to dispute Quinn's conclusion the fire was, in fact, the result of an intentional act.

In post-trial proceedings, Dougherty has submitted two expert reports from fire investigators stating Quinn used faulty assumptions to conclude the fire was arson.  Dougherty has also provided an affidavit from his trial lawyer in which the lawyer admitted he failed to give the case the attention it deserved.  Dougherty's  petition for post-conviction relief is currently pending appeal in the Pennsylvania Supreme Court, but he argues the extraordinary circumstances of this case merit this Court's intervention.

Although Dougherty's legal claims are compelling, this Court will stay Dougherty's habeas

petition to give the Pennsylvania Supreme Court an opportunity to rule on this matter.

**FACTS**

On August 24, 1985, Dougherty's two sons died in a house fire suspected to be arson. Fourteen years later, Dougherty's ex-wife, then in the middle of a custody dispute with Dougherty, told police Dougherty set the fire. Dougherty was arrested and charged with capital murder. At his trial, Quinn, a fire marshal for the Philadelphia Fire Department, testified (1) the fire was of incendiary origin; (2) the fire began in three separate locations; (3) Dougherty could not have been on the sofa when the fire began, as he claimed, because he would have been severely burned or killed; and (4) only the person who started the fire would be capable of escaping without injury. *See Pennsylvania v. Dougherty*, 860 A.2d 31, 35 (Pa. 2004). Dougherty's trial counsel did not conduct research or hire an independent fire expert to investigate whether there was sufficient physical evidence the fire was the result of arson. Instead, trial counsel relied on "personal experience" and "common sense." Petr.'s Ex. 2 at 2.

A jury convicted Dougherty of one count of arson and two counts of first-degree murder. He was sentenced to death. Dougherty appealed his convicted to the Supreme Court of Pennsylvania, which upheld Dougherty's conviction and death sentence. *See Pennsylvania v. Dougherty*, 860 A.2d 31 (Pa. 2004). The Pennsylvania Supreme Court dismissed Dougherty's ineffective assistance of counsel claims without prejudice, ruling such claims should be presented only during a collateral review if they were not properly raised at trial. *Pennsylvania v. Grant*, 813 A.2d 726 (Pa. 2002). The United States Supreme Court denied his petition for certiorari on October 3, 2005, thus ending direct review of Dougherty's case.

On November 16, 2005, Petitioner filed a *pro se* request for state collateral review under the

Pennsylvania Post Conviction Relief Act (PCRA). After several requests for more time, Dougherty's new counsel filed an amended petition on November 13, 2006. In this filing, Dougherty provided reports from two independent fire investigators who claim Quinn's conclusion the fire was arson lacked an adequate scientific foundation. Dougherty has also provided an affidavit from his trial lawyer, now deceased, in which the lawyer admitted he had failed to investigate the fire due to his belief prosecutors lacked sufficient evidence to secure a conviction and because he suffered "substantial personal health and family problems" during the pendency of Dougherty's case. Petr.'s Ex. 2 at 4.

At the time Petitioner began filing motions in federal court, the PCRA court had not yet held a PCRA hearing. The same judge presided over both Dougherty's trial and his PCRA petition. The PCRA court failed to hold a hearing or rule on Dougherty's petition for 27 months. Dougherty argued the PCRA court was not impartial given its role in Dougherty's earlier proceedings, and filed a recusal motion on April 15, 2008. On February 26, 2009, Dougherty filed a complaint in mandamus to compel the PCRA court to rule on the Motion to Recuse and the PCRA petition. The court denied the recusal motion the following day. Dougherty sought to expedite his state court appeal of his PCRA claim, but this request was denied on July 15, 2009. He claims it will be years until the state court reviews his case.

On March 6, 2009, this Court granted Petitioner's motion for in forma pauperis status and appointed the Federal Defender and Ballard Spahr to represent Petitioner. On April 2, 2009, the PCRA court denied Dougherty's PCRA petition. No evidentiary hearing was held, a fact the court excused because Dougherty's trial counsel had since died. Dougherty's fire experts were not given the opportunity to testify, although they presented written reports to the court.

Petitioner filed his federal habeas petition on August 14, 2009. The Capital Defender characterizes Dougherty as an innocent man, alleging the fire was not arson. Since 1985, there have been many advances in the field of fire science, and researchers have contradicted fire investigators' claims that certain physical remnants of the fire–such as burn patterns, cracked glass, and charring–are indicative of arson.

**DISCUSSION**

Dougherty admits he has not exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A). To exhaust habeas claims, a state prisoner must "fairly present" all federal claims to the highest state court. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). If the petitioner currently has a state avenue available for raising his claims, a federal court generally must abstain from intervening. *Id.* The exhaustion doctrine addresses "federalism and comity concerns by affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Coady v. Vaughn*, 251 F.3d 480, 488 (3d Cir. 2001) (citation and internal quotation marks omitted).

There are limited exceptions to the exhaustion requirement. Federal courts may consider unexhausted claims if "there is no appropriate remedy at the state level" or if "the state process would frustrate the use of an available remedy." *Lee v. Stickman*, 357 F.2d 338, 341 (3d Cir. 2004). Federal courts may also entertain unexhausted claims if there has been undue delay during the state court proceedings. *Lines v. Larkins*, 208 F.3d 153, 161 (3d Cir. 2000). Further, the exhaustion requirement may be disregarded in "exceptional" or "extraordinary" cases where its application would cause irreparable injury to a petitioner's rights. *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *U.S. ex rel. Gockley v. Myers*, 411 F.2d 216, 219 (3d Cir. 1969) ("If the case is sufficiently

4

exceptional the [exhaustion] doctrine need not be rigidly followed to the point of inflicting manifest injustice."). Dougherty argues all of these exceptions apply to his case.

First, Dougherty claims there has been undue delay throughout the state proceedings. After securing new legal counsel, Dougherty filed an amended PCRA petition on November 13, 2006. Although his PCRA review process took 28 months, no court has ever found this length of time to constitute undue delay. Moreover, the state court's timing was not unduly long in light of the nature of this case. There were extensive briefs filed, and Dougherty was granted extra time to draft his briefs and complete additional discovery. Dougherty has only recently filed his appellate brief in the Pennsylvania Supreme Court, submitting it on August 19, 2009. He predicts the Supreme Court will take "years" to decide his appeal. Petr.'s Br. at 30. This Court cannot find undue delay based on Dougherty's prediction of the state appellate court's inaction. Therefore, Dougherty's failure to exhaust state remedies cannot be excused as a result of undue delay.

Dougherty also argues the PCRA court's bias makes pursuing his state claims futile. This Court draws no conclusions about any personal bias possessed by the PCRA court. At this time, however, this Court is not the proper venue for Dougherty to pursue such claims because the bias of a PCRA judge would not prevent a petitioner from receiving an unbiased tribunal at the appellate level. The Pennsylvania Supreme Court now has the opportunity to address any problems it perceives in the PCRA court's handling of Dougherty's PCRA petition. If the Supreme Court is concerned about judicial bias, it has authority to remand the case to a new judge for an evidentiary hearing. Were this Court to preempt the state's ability to regulate its judicial affairs, it would usurp the power of the judicial system of the state of Pennsylvania. Interests of federalism require this Court give the state appellate court an opportunity to analyze and remedy any errors made by the

5

PCRA court.[1]

Finally, Dougherty contends the cumulative effect of the delay, bias, and his claim of actual innocence combine to render this case "extraordinary." Petr.'s Br. at 22. The problem with this argument is that this Court would need to make a finding Dougherty has met the "extraordinarily high burden" of showing he is actually innocent. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993). The test for a claim of actual innocence is strict, requiring evidence so convincing that no reasonable juror would have voted to convict upon hearing such evidence. *Schlup v. Delo*, 513 U.S. 298 (1995). The expert reports submitted by Dougherty cast doubt on certain evidence introduced at trial, but they don't conclusively *prove* Dougherty is innocent. Indeed, as the PCRA court correctly noted,

---

[1] This Court's inability to take action at this stage of the case should not be taken as an indication it does not recognize the troubling aspects related to the handling of Dougherty's PCRA petition. The PCRA court failed to hold a hearing to address the striking evidence in the expert reports presented by Dougherty. Generally, a hearing would be appropriate in a capital case where a petitioner introduces evidence containing new information which creates a dispute as to the facts presented at trial. *See Pennsylvania v. Banks*, 656 A.2d 467, 474 (Pa. 1995) ("[A]n evidentiary hearing [should] be held on a post-conviction petition where there are factual issues to be resolved."); *see also* Pa. R. Crim. P. 909(B) (requiring a hearing for all genuine issues of material fact raised in a capital appeal). It is unclear why the PCRA court would conclude there was no "issue of material dispute" given the differences between Quinn's testimony at trial and the submissions of Dougherty's experts.

Further, in deciding capital appeals the PCRA court must address all claims raised by a petitioner. *See Pennsylvania v. Williams*, 732 A.2d 1167, 1176 (Pa. 1999). Here, the PCRA court dismissed "any issue raised by Petitioner not specifically addressed herein" by holding, without explanation, that such claims were "so patently specious that no further elucidation beyond the Commonwealth's reasoned and accurate response is needed." *Pennsylvania v. Dougherty*, CP 9907-0537, at 10 (Pa. Commw. Ct., Apr. 2, 2009). In so doing, the PCRA court appears to adopt the prosecutor's brief in violation of Pennsylvania law. *See Williams*, 732 A.2d at 1176 ("[I]n this post-conviction case involving a review of the propriety of a death sentence, [the Court cannot] condone the wholesale adoption by the post-conviction court of an advocate's brief."); *Pennsylvania v. DeJesus*, 868 A.2d 379, 383 (Pa. 2005) ("The trial court's adoption of one party's advocacy brief, in lieu of an independent judicial opinion, deprives the parties and the public of the independent reasoning of the court.").

Because these issues can be remedied within the context of Dougherty's state court appeal, however, this Court will not intercede at this time.

Dougherty's experts both stated they cannot draw a firm conclusion about whether the fire was, or was not, arson.[2]  *Pennsylvania v. Dougherty*, CP 9907-0537, at 7 (Pa. Commw. Ct., Apr. 2, 2009). Without a more developed evidentiary record in the state court, this Court declines to make the finding Dougherty is factually innocent and should be exonerated.

Instead of providing adequate reasons for this Court to excuse the exhaustion requirement, Petitioner makes a compelling argument that his trial counsel was ineffective due to counsel's complete failure to inquire into the circumstances of the fire.[3]  To succeed on an ineffective assistance of counsel claim, a petitioner must show:  (1) counsel's performance was deficient; (2) there was no strategic or reasonable basis for the performance; and (3) the deficiency prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. 667-68 (1984).  Fire Marshall John Quinn's testimony, allegedly based on faulty science, was unimpeached due to trial counsel's failure to consult a fire expert, read the standards for fire investigations, or do basic research of any kind. Quinn provided some of the strongest evidence against Dougherty, insinuating Dougherty could not have escaped unscathed from the house unless he had set the fire himself.  If, as Dougherty's experts allege, there was inadequate evidence to support Quinn's testimony, it is possible the outcome of Dougherty's trial would have been different.  This routine ineffective assistance of counsel claim is potentially meritorious, but it is not "extraordinary" in the absence of a finding Dougherty is actually

---

[2] This Court does not necessarily agree with the PCRA court's characterization of the expert testimony as "equivocal" or the conclusion that a jury would have given greater weight to Quinn's testimony.  *Pennsylvania v. Dougherty*, CP 9907-0537, at 7 (Pa. Commw. Ct., Apr. 2, 2009).  The nature and weight of Dougherty's expert reports are factual matters which require further development within the state court proceedings.

[3] This Court will not prejudge whether Dougherty's trial counsel was ineffective due to his failure to investigate or due to his other actions during the guilt and penalty phases of Dougherty's trial. Similarly, this Court will reserve judgment on whether Dougherty's other claims have merit.

innocent.

Dougherty's claims are thus subject to the exhaustion requirement, and no exception applies. A federal court ordinarily may not issue a writ of mandamus to compel a state court to exercise the jurisdiction entrusted to it.  *In re Grand Jury Proceedings*, 654 F.2d 268, 278 (3d Cir. 1981).  This Court therefore has the option of dismissing this case without prejudice or issuing a stay to give the Pennsylvania Supreme Court an opportunity to pass judgment on Dougherty's PCRA appeal.  *See Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004) ("Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition.").  Given the apparent strength of Dougherty's claims, the Court elects to stay his petition and monitor the status of the parallel state court proceeding.  If the state appellate procedures are excessively delayed, as Dougherty fears, this Court retains the option of acting to ensure Dougherty has a forum in which to pursue his claims.

An appropriate order follows.


Dated:  October 28, 2009